ORIGINAL

Approved: *M. S[...]*
CHRISTY SLAVIK
Assistant United States Attorney

Before: THE HONORABLE STEWART D. AARON
United States Magistrate Judge
Southern District of New York

**21 MAG 3688**

- - - - - - - - - - - - - - - - - X
                                   :
UNITED STATES OF AMERICA           :     SEALED COMPLAINT
                                   :
    - v. -                         :
                                   :     Violations of
ALPHA SHABAN,                      :     18 U.S.C. §§ 1349, 1956,
CHIAKA OGUADINMA,                  :     1028A, and 2
                                   :
                                   :
                 Defendants.       :
                                   :
- - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

       MATTHEW P. AMMANN, being duly sworn, deposes and says that he is a Special Agent with the Internal Revenue Service, Criminal Division, and charges as follows:

COUNT ONE
(Conspiracy to Commit Wire Fraud and Bank Fraud)

       1.   From at least in or about October 2017 through at least in or about May 2019, in the Southern District of New York and elsewhere, ALPHA SHABAN and CHIAKA OGUADINMA, the defendants, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343, and bank fraud, in violation of Title 18, United States Code, Section 1344.

       2.   It was a part and an object of the conspiracy that ALPHA SHABAN and CHIAKA OGUADINMA, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud

1

and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

3. It was further a part and an object of the conspiracy that ALPHA SHABAN and CHIAKA OGUADINMA, the defendants, and others known and unknown, willfully and knowingly, would and did execute and attempt to execute a scheme and artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institution, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
(Conspiracy to Commit Money Laundering)

4. From at least in or about October 2017 through at least in or about May 2019, in the Southern District of New York and elsewhere, ALPHA SHABAN and CHIAKA OGUADINMA, the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate Title 18, United States Code, Section 1956(a)(1)(B)(i).

5. It was a part and an object of the conspiracy that ALPHA SHABAN and CHIAKA OGUADINMA, the defendants, and others known and unknown, in an offense affecting interstate and foreign commerce, knowing that the property involved in a financial transactions, to wit, cash transactions and wire transfers, represented the proceeds of some form of unlawful activity, did conduct and attempt to conduct such a financial transactions, which in fact involved the proceeds of specified unlawful activity, to wit, wire and bank fraud, knowing that the transaction was designed, in whole and in part, to conceal and disguise the nature, location, the source, the ownership, and the control of the proceeds of the specified unlawful activity,

in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

(Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.)

## COUNT THREE
(Aggravated Identity Theft)

6. From at least in or about October 2017 through at least in or about May 2019, in the Southern District of New York and elsewhere, ALPHA SHABAN and CHIAKA OGUADINMA, the defendants, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, SHABAN and OGUADINMA used the names and/or social security numbers during and in relation to the bank and wire fraud conspiracy charged in Count One of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1) & (b), and 2.)

The bases for my knowledge and the foregoing charges are, in part, as follows:

7. I am a Special Agent with the Internal Revenue Service, Criminal Investigation. I have been personally involved in the investigation of this matter. This affidavit is based upon my investigation, my conversations with law enforcement agents and others, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### Overview

8. As described in further detail below, ALPHA SHABAN and CHIAKA OGUADINMA, the defendants, opened and/or exercised control over bank accounts in the names of various individuals and entities. SHABAN and OGUADINMA used these accounts to receive and launder the proceeds of various

fraudulent schemes. For example, victims were induced to wire money to the bank accounts controlled by SHABAN and OGUADINMA through false representations that the victims were: (i) employed as a debt collector; (2) transferring money in connection with a property purchase; (3) wiring money to a romantic partner; or (4) wiring money to redeem a sweepstakes prize. In addition, on at least one occasion, an account opened and controlled by SHABAN and OGUADINMA was fraudulently linked to an existing victim account, permitting SHABAN and OGUADINMA to fraudulently transfer funds from the victim's legitimate accounts to themselves.

The Fraud Accounts

9. Based on my review of bank records, I have learned the following:

a. On or about October 25, 2017, an account ("Fraud Account-1") was opened at a bank ("Bank-1"). Fraud Account-1 was a business account opened in the name of Nincheibia Enterprise Inc. ("NEI"), with "Alpha J Shaban" listed as the authorized signatory. The address listed for NEI was a Bronx address (the "Bronx Address").

b. On or about November 28, 2017, another account ("Fraud Account-2") was opened at another bank ("Bank-2"). Fraud Account-2 was a business account opened in the name of NEI, and listed "Alpha J. Shaban," as the president of NEI and the sole authorized signatory of Fraud Account-2.

c. On or about June 4, 2018, another account ("Fraud Account-3") was opened at another bank ("Bank-3"), at a Bank-3 branch located in Manhattan. Fraud Account-3 was a business account opened in the name of NEI, and listed "Alpha J. Shaban," as the owner with control of NEI and the sole authorized signatory of Fraud Account-3. The address listed for NEI was the Bronx Address.

d. On or about January 28, 2019, another account ("Fraud Account-4") was opened at a bank ("Bank-4"). Fraud Account-4 was a business account opened in the name of a particular person ("Victim-1"), d/b/a "[Victim-1] Services." As set forth below, however, Victim-1 did not in fact open or authorize the opening of Fraud Account-4 and "[Victim-1] Services" is a fictional entity.

    e. On or about December 13, 2018, another account ("Fraud Account-5") was opened at a bank ("Bank-5"). Fraud Account-5 was a checking account opened in the name of "Alpha J Shaban," who was also listed as the sole signatory on the account.

    f. On or about March 6, 2019, another account ("Fraud Account-6") was opened at Bank-3. Fraud Account-6 was a business checking account opened in the name of a fictitious company, as set forth in more detail below.

### The Fraudulent Schemes

*Fake Employment Scheme*

   10. Based on my conversations with a victim ("Victim-2"), my conversations with other law enforcement officers, my review of documents provided to me by Victim-2, and my review of bank records, I have learned the following, in substance and in part:

    a. Victim-2 is a resident of Mississippi, who was unemployed in or around March 2018.

    b. In or around March 2018, Victim-2 was contacted by email with an employment opportunity to work as a debt collector for a steel company located in Japan. The employment opportunity would purportedly provide Victim-2 with a percentage of any debt collected.

    c. Shortly after Victim-2 accepted the job offer, Victim-2 received a check via FedEx for approximately $69,880.70 (the "Check"). Victim-2 then received an email with instructions to deposit the check into Victim-2's personal bank account and wire the funds, less Victim-2's "commission," into Fraud Account-1.

    d. On or about March 28, 2018, Victim-2 made a wire transfer in the amount of approximately $66,361.70 into Fraud Account-1.

    e. On or about March 29, 2018, funds totaling approximately $63,000 were withdrawn from Fraud Account-1 in the following manner: (1) official check in the amount of $25,000 payable to "Alpha Shaban," (2) official check in the amount of

$30,000 payable to "Justice Shuaib," and (3) a cash withdrawal of $8,000.

    f.  Approximately one day after making the wire transfer into Fraud Account-1, Victim-2 was informed by Victim-2's bank that the Check was fraudulent and had been returned as a result of insufficient funds. Besides depositing the Check and wiring funds into Fraud Account-1, Victim-2 never performed work in connection with the job opportunity. Victim-2 was never reimbursed for the funds, and never received payment from the purported employer.

*The Business Email Compromise Scheme*

    11.  Based on my conversations with a victim ("Victim-3"), my conversations with other law enforcement officers, and my review of bank records, law enforcement reports, and litigation documents, I have learned the following, in substance and in part:

    a.  Victim-3 resides in California. In or around October 2017, Victim-3 was in the process of buying a home. The purchase price of the home was $655,000, of which Victim-3 was making a down payment of $350,000, with the remainder to be paid through a mortgage.

    b.  A title company (the "Title Company") was handling the sale of the home. In or around February 2018, Victim-3 received an email purporting to be from the Title Company ("Email-1"). Email-1 included wiring instructions for the $350,000 down payment. In reliance on Email-1, Victim-3 transferred $350,000 from his personal bank account at Bank-4 per the instructions in the email. The wire was returned as fraudulent, but Bank-4 did not notify Victim-3 of the fraud. Approximately one week after Victim-3 sent the initial wire, Victim-3 received another email purporting to be from the Title Company ("Email-2"), with new wiring instructions for the $350,000 down payment. Email-2 instructed Victim-3 to wire the funds to Fraud Account-2.

    c. On or about February 26, 2018, in reliance on Email-2, Victim-3 transferred approximately $350,000 from his personal account at Bank-4 into Fraud Account-2.[1]

    d. Following Victim-3's wire transfer into Fraud Account-2, the Title Company contacted Victim-3 to inform Victim-3 that the Title Company had not received the $350,000 wire. At that time, Victim-3 realized that Email-1 and Email-2 were not actually from the Title Company.

    e. On or about February 27, 2018, approximately $106,500 was withdrawn from Fraud Account-2 via wire and cash withdrawals. Following these withdrawals, approximately $280,133 was left in Fraud Account-2.

    f. Subsequently, on or about March 1, 2018, the remaining funds, approximately $280,133, in Fraud Account-2 were frozen by Bank-2 for suspected fraudulent activity.

    g. At some point, the remaining funds in Fraud Acount-2 were unfrozen by Bank-2. On or about June 12, 2018, a check payable to NEI in the amount of approximately $280,133.00 was written from Fraud Account-2 ("NEI Check-1"). NEI Check-1 was deposited into Fraud Account-3 on or about July 12, 2018 at a Bank-3 ATM in Manhattan.

    h. Between in or around July 2018 and in or around September 2018, funds totaling approximately $198,250.00 were withdrawn from Fraud Account-3 by personal checks to CHIAKA OGUADINMA, the defendant.

*The Romance Scheme*

    12. Based on my review of reports of conversations with a victim ("Victim-4"), my conversations with other law enforcement officers, and my review of bank records and

---

[1] On the same day that Victim-3 transferred $350,000 into Fraud Account-2, Fraud Account-2 also received a wire transfer in the amount of $36,872.00, bringing the balance of Fraud Account-2 to $386,872.00.

7

surveillance footage, I have learned the following, in substance and in part:

      a. Victim-4 lives in Florida.

      b. Victim-4 met an individual who identified himself as "Michael Williams" through a prayer group in Florida. In or around 2018, the two married in a private ceremony, although there is no legal record of the marriage.

      c. Victim-4 has not seen her husband in a couple of years, because he has been working in South Africa.

      d. Victim-4 communicates with her husband by telephone.

      e. In or around April 2019, Victim-4's husband asked Victim-4 for money to pay his living expenses in South Africa. Victim-4's husband gave her an account number, and instructed her not to make deposits over $10,000, because it would create a problem.

      f. Between in or around April 2019 and in or around May 2019, Victim-4 made multiple cash deposits in the account provided by Victim-4's husband. Specifically, during this time, Victim-4 made six cash deposits into Fraud Account-4:

| Date | Amount of Deposit |
| --- | --- |
| April 24, 2019 | $10,000 |
| April 29, 2019 | $10,000 |
| May 2, 2019 | $10,000 |
| May 8, 2019 | $6,500 |
| May 13, 2019 | $5,000 |
| May 20, 2019 | $10,000 |
| **TOTAL** | **$51,500** |

    13. Based on my review of bank records, including bank surveillance video, my conversations with Victim-1, and law enforcement reports that I have reviewed in the course of this investigation, I have learned, among other things, the following:

      a. Fraud Account-4 was a checking account opened on or about January 28, 2019 at a Bank-4 branch in Las

Vegas, Nevada.  Fraud Account-4 was opened in the name Victim-1, "d/b/a [Victim-1] Services."

    b. Fraud Account-4 was opened in person by an unknown individual ("CC-1") purporting to be Victim-1.  CC-1 provided the social security number of Victim-1 to open Fraud Account-4.

    c. Based on my conversations with Victim-1, my review of bank records, and my review of records from certain state Departments of State, however, I know that Victim-1 has never had a company called "[Victim-1] Services," and there is no record of such an entity in Nevada or Texas.  Victim-1 has never had a bank account at Bank-4, has never opened a bank account in Las Vegas, Nevada, and has no ties to Las Vegas, Nevada.  Accordingly, I believe that Fraud Account-4 was opened using the stolen identity of Victim-1 and that "[Victim-1] Services" is a fictional entity.

    d. Following Victim-4's cash deposits into Fraud Account-4, Bank-4's surveillance cameras captured an individual subsequently identified as CHIAKA OGUADINMA, the defendant, make multiple withdrawals from Bank-4 ATMs and Bank-4 branches located in New Jersey, in the amount of $58,050, roughly consistent with Victim-4's cash deposits.  I believe that the individual who made the withdrawals from Fraud Account-4 was OGUADINMA because I have personally compared law enforcement photos of OGUADINMA, which appear to match the individual seen making withdrawals from Fraud Account-4 in Bank-4's surveillance footage.

    e. OGUADINMA's withdrawals from Fraud Account-4 are set forth in detail below:

      i. Following Victim-4's deposit of $10,000 into Fraud Account-4 on April 24, 2019, OGUADINMA withdrew $9,950 over multiple transactions from Bank-4 ATMs and Bank-4 tellers in New Jersey on April 24, 2019 and April 25, 2019.

      ii. Following Victim-4's deposit of $10,000 into Fraud Account-4 on April 29, 2019, OGUADINMA withdrew $10,000 over multiple transactions from Bank-4 ATMs and Bank-4 tellers in New Jersey on April 29, 2019 and April 30, 2019.

      iii. Following Victim-4's deposit of $10,000 into Fraud Account-4 on May 2, 2019, OGUADINMA withdrew $12,000

over multiple transactions from Bank-4 ATMs and Bank-4 tellers in New Jersey between May 2, 2019 and May 6, 2019.[2]

          iv.    Following Victim-4's deposit of $6,500 into Fraud Account-4 on May 8, 2019, OGUADINMA withdrew $6,500 over multiple transactions from Bank-4 ATMs and Bank-4 tellers in New Jersey on May 9, 2019.

          v.    Following Victim-4's deposit of $5,000 into Fraud Account-4 on May 13, 2019, OGUADINMA withdrew $5,000 over multiple transactions from Bank-4 ATMs and Bank-4 tellers in New Jersey on May 13, 2019 and May 14, 2019.

          vi.    Following Victim-4's deposit of $10,000 into Fraud Account-4 on May 20, 2019, OGUADINMA withdrew $14,600 over multiple transactions from Bank-4 ATMs and Bank-4 tellers in New Jersey between May 20, 2019 and May 24, 2019.[3]

          vii.    Ultimately, between on or about April 24, 2019 and on or about May 20, 2019, Victim-4's deposits into Fraud Account-4 combined with Unknown Male-1's deposits into Fraud Account-4 totaled approximately $58,500. Between on or about April 24, 2019 and on or about May 24, 2019, OGUADINMA withdrew approximately $58,050 from Fraud Account-4.

          f.    Victim-4 was not familiar with OGUADINMA's name. Furthermore, Victim-4's description of the appearance of her husband was inconsistent with OGUADINMA's physical appearance.

*The Lottery Scheme*

    14.    Based on my review of reports of conversations with a victim ("Victim-5"), my conversations with other law enforcement officers, my review of law enforcement records and reports, and my review of bank records, I have learned the following, in substance and in part:

          a.    Beginning in or about November 2018, an unknown individual ("CC-2") repeatedly contacted Victim-5 by

---

[2] On or about May 3, 2019, an unidentified male ("Unknown Male-1") made a cash deposit of $2,000 into Fraud Account-4.
[3] On or about May 17, 2019, Unknown Male-1 made another cash deposit of $5,000 into Fraud Account-4.

10

telephone, and told Victim-5 that Victim-5 had won a sweepstakes.

        b. During their telephone conversations, CC-2 advised Victim-5 that before claiming any winnings, Victim-5 was required to pay various taxes and processing fees associated with the sweepstakes. CC-2 provided names of individuals and entities to whom Victim-5 should direct funds, as well as routing information for bank accounts into which Victim-5 should deposit funds.

        c. In reliance on these statements, between November 2018 and January 2019, Victim-5 made approximately 20 payments totaling approximately $347,250 using various methods of payment, including cashier's checks and wire transfers. Specifically, on or about December 11, 2018, at the direction of CC-2, Victim-5 sent a cashier's check to ALPHA SHABAN, the defendant, to an address in the Bronx, New York, in the amount of $87,000. Days later, on or about December 14, 2018, SHABAN deposited the cashier's check into Fraud Account-5, which had been opened on or about December 13, 2018.

        d. Victim-5 has not received any proceeds from any sweepstakes.

*Identity Theft*

15. Based on my conversations with another ("Victim-6"), my conversations with other law enforcement officers, my review of law enforcement records and reports, I have learned the following, in substance and in part:

        a. Victim-6 is a resident of Florida, and had bank accounts with Bank-3 since approximately 2011. Specifically, Victim-6 maintained a checking account with Bank-3 (the "Checking Account") and a savings account with Bank-3 (the "Savings Account").

        b. In or around March 2019, an unknown individual ("CC-3") used Victim-6's personal identifying information, including Victim-6's date of birth and social security number, to open Fraud Account-6 at a Las Vegas, Nevada branch of Bank-3. Bank-3 linked Fraud Account-6 to the Checking Account and the Savings Account.

         c.    On or about March 13, 2019, approximately $47,500 was electronically transferred from the Savings Account into Fraud Account-6. From there, $47,000 was transferred into Fraud Account-4. On or about March 14, 2019, a cashier's check in the amount of $20,000 made payable to CHIAKA OGUADINMA, the defendant, was drawn on Fraud Account-4.

         d.    On or about March 18, 2019, approximately $7,300 was electronically transferred from the Checking Account into Fraud Account-6.

         16.    Based on my review of bank records and credit card statements, I have learned the following, in substance and in part:

         a.    In or around February 26, 2019, an unknown individual ("CC-4") used Victim-6's personal identifying information, including Victim-6's date of birth and social security number, to open a credit card in Victim-6's name (the "Fraudulent Credit Card") through a bank ("Bank-6"). The Fraudulent Credit Card had a $15,000 spending limit.

         b.    Between approximately March 2019 and approximately April 2019, the Fraudulent Credit Card was used to make purchases totaling $14,785.22. Among the purchases on the Fraudulent Credit Card were several airline tickets for travel between Las Vegas and New York in the names of ALPHA SHABAN and CHIAKA OGUADINMA, the defendant.

         17.    Based on my review of law enforcement reports and bank reports, I have learned the following, in substance and in part:

         a.    On or about May 29, 2019, ALPHA SHABAN, the defendant, visited a Las Vegas, Nevada branch of Bank-6, attempting to complete a transaction in Victim-6's name. SHABAN identified himself to the Bank-6 teller as Victim-6 and presented a Pennsylvania driver's license with Victim-6's name and a photo of SHABAN. The Bank-6 teller then asked SHABAN for a social security number. SHABAN ultimately provided a social security number to the Bank-6 teller, which pulled up a fraud alert. Because there was a fraud alert on the account, the

Bank-6 teller called the Las Vegas Metropolitan Police Department (the "LVMPD").

    b. After the LVMPD arrived, SHABAN was arrested for offenses related to his attempt to withdraw funds from an account opened through identity theft. Following SHABAN's arrest, SHABAN provided his real name and date of birth to the LVMPD. Additionally, SHABAN was fingerprinted by the LVMPD. SHABAN's fingerprints matched fingerprints associated with SHABAN from an Immigration and Naturalization Services database.

    c. Following SHABAN's arrest, the LVMPD performed a judicially-authorized search of SHABAN's vehicle, and found the following items:

     i. A credit card issued in the name of Victim-6;

     ii. Multiple forged drivers' licenses in the names of other individuals but with SHABAN's photo, including a driver's license in the name of Victim-6 with SHABAN's photo; and

     iii. Multiple credit cards issued in the names of other individuals.

  WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of ALPHA SHABAN and CHIAKA

OGUADINMA, the defendants, and that they be arrested and be imprisoned or bailed, as the case may be.

/s/ Matthew P. Ammann, by SDA  with permission

MATTHEW P. AMMANN
Special Agent
Internal Revenue Service,
Criminal Division

Sworn to me through the transmission of this Affidavit by reliable electronic means this 5th day of April, 2021

THE HONORABLE STEWART D. AARON
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK