# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

## MEMORANDUM ENDORSED

August 26, 2021

**BY ECF**

The Honorable Judge Gregory H. Woods
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #:_____           │
│ DATE FILED:    9/8/2021          │
└─────────────────────────────────┘
```

**RE:**   **United States v. Alpha Shaban**
          **21 Cr. 314 (GHW)**

Honorable Judge Woods:

The defense writes to respectfully request that the Court release Mr. Alpha Shaban with conditions. At his initial presentment on June 2 2021, Magistrate Judge Sarah L. Cave ordered Mr. Shaban detained without bail. Since that time, Mr. Shaban has been held at Essex County Correctional Facility ("Essex"). This time away from his partner and young children has placed an extreme burden on his family. Moreover, his continued detention during an ongoing global health pandemic poses great risk to his physical health. The defense respectfully requests that Mr. Shaban be released with conditions (outlined below) and allowed to return to his home with his partner, Edna Rogers.

### Standard

"A single individual unnecessarily detained before trial is one individual too many, and the increasing use of the practice places tremendous wear on our constitutional system." United States v. Paulino, 335 F. Supp. 3d 600, 609 (S.D.N.Y. 2018) (Carter, J.) (citation omitted). Consistent with the Eighth Amendment's prohibition on excessive bail, the Bail Reform Act of 1984 ("BRA") "requires a court to order the pretrial release of a defendant on a personal recognizance bond 'unless the court determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.'" United States v. Sabhani, 493 F.3d 63, 75 (2d Cir. 2007) (quoting 18 U.S.C. § 3142(b)). A court should "bear in mind that it is only a 'limited group of offenders' who should be denied bail pending trial." United States v. Shakur, 817 F.2d 189, 195 (2d Cir. 1987). Otherwise, the BRA necessitates

that courts release pretrial defendants "subject to the least restrictive further condition, or combination of conditions, that [it] determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B).

The government bears the burden to show that pretrial detention is appropriate. Sabhnani, 493 F.3d at 75. In a non-violent case like the instant matter for a first time offender, detention is legally permitted only if the government can demonstrate that there is a "serious risk" of flight. See 18 U.S.C. § 3142(f)(2). And if, as Mr. Shaban can demonstrate, there are conditions of release that will reasonably assure his appearance in Court, then the Court must release him pursuant to those conditions.

The BRA "has been construed to require that a district judge conduct  a de novo review of a magistrate's bail determination." Paulino, 335 F. Supp. 3d at 609 (citations omitted). Thus, this Court "must exercise its independent judgment, and not defer to the magistrate." Id. (citing United States v. Leon, 766 F.2d 77, 80 (2d Cir. 1985). In making its determination, this Court should rely on the factors enumerated in the BRA, 18 U.S.C. § 3142(g), including: "the nature and circumstances of the offense charged;" (2) "the weight of the evidence against the person;" (3) "the history and characteristics of the person" including, among other factors, family ties, employment, financial resources, past conduct, criminal history, and whether the person was on release pending trial; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." Id.

Mr. Shaban should be released pending his trial. He is charged with non-violent financial offenses for alleged conduct that terminated in May 2019, nearly two years before his arrest. Mr. Shaban's background and circumstances demonstrate that he is not a serious flight risk and there are a range of conditions, short of incarceration during a global health pandemic, that would reasonably assure his appearance in Court.

**Factors Favoring a Less Restrictive Alternative**

I.    **Alpha Shaban's background and strong community ties warrant release.**

Alpha Shaban is a 49-year-old with absolutely no prior criminal convictions. He has lived in the United States since 1999, and has been a legal permanent resident since 2006 (verified by the Pretrial Services Agency.) Mr. Shaban's ties to this country run deeper than his immigration status. He is the father of five to two teenagers—a 16-year-old daughter and 15-year-old son—and three young boys—a 1-year-old; 3-year-old; and 6-year-old. All of his children live here in the United States.

The mother of his three youngest children is his partner, Edna Rogers. Mr. Shaban and Ms. Rogers have been together for seven years. As Ms. Rogers notes in her letter to the Court, they may not be legally married but "we are a married couple in every single other way." Ex. A (Letter of Support from Edna Rogers). While Mr. Shaban splits his time between an apartment in New York and his home with Ms. Rogers in West Haven, they have a strong relationship and Mr. Shaban has always been an active and engaged father to their children. Ms. Rogers writes:

He takes the kids out to the movies, beach, park, and doctor's appointments. He cooks for the kids every morning he makes them breakfast. He makes scrambled eggs, toast, and hot cereal. Dinner is a team effort with me and Alpha. His favorite dish to make us is this chicken and potatoes dish with rice.  He reads the kids bedtime stories and picks them up from school.

Ex. A.

Mr. Shaban will reside in West Haven with Ms. Rogers and his three youngest children if released. His presence is especially needed now in the home given his 3-year old son's behavioral and emotional needs. His son has autism and currently Ms. Rogers is struggling to take care of him along with their infant and 6-year-old. When Mr. Shaban was in the community, he helped with taking their 3-year-old to therapy appointments and generally had a calming presence for their son. Ms. Rogers states in her letter:

My middle child ███████ has autism and has a speech delay. We just recently got him potty trained which was even harder doing it alone. Alpha is the one who takes him to his speech therapy and other appointments every week. Now he cries a lot and does not cooperate. They want to increase his lessons and maybe make it daily because the current situation isn't working.  Our son got used to the routine with Alpha so switching it up was really hard. We worry he's going to start regressing.

Mr. Shaban's strong ties to this country extend beyond his partner and his minor children. Mr. Shaban has a brother who lives in Minneapolis and several close friends who live in this country, including Mr. Edmond Yeboah, a close family friend who has known Mr. Shaban for over 25 years, is a US citizen and is willing to co-sign a bond on Mr. Shaban's behalf.

## II.     The circumstances of Mr. Shaban's arrest and the alleged offense do not warrant continued detention.

Mr. Shaban's strong community ties are evidence that he is not a serious flight risk. Nor is Mr. Shaban a serious flight risk based on the circumstances of his arrest. Mr. Shaban was arrested in Las Vegas on April 13, 2021. The purpose of his presence in Las Vegas was to attend court in a pending and related state matter—further proof of his commitment to showing up to address his legal obligations. Significantly, Mr. Shaban has no pending warrants in the Las Vegas case. While his prior warrants related to that case were raised in previous detention hearings, this Court should know that each warrant was quashed after Mr. Shaban's attorney provided information on the circumstances of Mr. Shaban's absence to the judge.

3

When agents arrived to arrest Mr. Shaban on April 13, 2021, Mr. Shaban was compliant, contrary to the allegation of agents that he moved towards a side door. Mr. Shaban did not resist or engage in any violent conduct to avoid arrest in this case. While there is an understandable fear and shock when suddenly faced with armed officers while resting in your friend's home, Mr. Shaban had no desire to flee and is eager to address this case.

The alleged evidence against Mr. Shaban also fails to suggest that he is such a risk of flight that there are no conditions that can assure his appearance in Court. The evidence produced so far suggests that Mr. Shaban is not the most culpable member of the alleged operation or at the top of the operation's food chain. Significantly, the discovery does not show or contain communications between Mr. Shaban and any of the alleged victims— no promises, no inducements, no threats. With respect to the allegation that Mr. Shaban has been in possession of identifying documents that are not his own, this concern is best addressed through an appropriate and tailored condition of release—not incarceration. In fact, Magistrate Judge Barbara Moses took this very approach in *United States v. Xavier Delacruz*, 20 Mag 10858. There, Judge Moses ordered the release of Mr. Delacruz, despite a presumption of detention given the narcotics charge and despite the fact that Mr. Delacruz was found to be in possession of multiple driver's licenses with his face but other people's identifying information. Judge Moses released Mr. Delacruz and imposed as one of his conditions, the following: "Defendant is not to possess licenses, ID cards, credit cards or other personally identifying documents in any name, or bearing any likeness, other than his own true name and likeness (except for his minor children)." Ex. B (Delacruz Conditions of Release).

Finally, while Mr. Shaban faces a mandatory minimum charge related to the aggravated identity theft charge, that term of incarceration is two years, and there is no mandatory minimum for the wire fraud or money laundering counts. He is in the lowest criminal history category for purposes of the USSC sentencing guidelines. And, it is worth noting, Mr. Shaban's co-defendant, Chiaka Oguadinma, was released on his own signature on April 21, 2021 pursuant to the following conditions:

> $25,000 PRB; 2 FRP; Travel restricted to SDNY/EDNY/State of Texas; Surrender travel documents (& no new applications); Pretrial supervision as directed by Pretrial Services; GPS; Defendant to pay all of part of cost of location monitoring, as determined by Pretrial Services; Defendant to continue or seek employment; Defendant not to possess firearm/destructive device/other weapon; Defendant to be released on own signature; Remaining conditions to be met by 4/30/2021. Defendant may not be employed in a role related to the instant offense or position that accesses other individual's personal information; to avoid all contact with co-defendant, victims or potential victims; should remove weapons in home prior to release; to refrain from excessive use of alcohol; must refrain from use or unlawful possession of a narcotic drug or other controlled substance unless prescribed by a licensed medical practitioner; to report contact with law enforcement; may not open any new lines of credit without the prior approval of

4

Pretrial Services; and may not be employed in a role related to the instant offense or a position that accesses individual's personal information.

### III.    Release is warranted in light of the continued spread of COVID-19.

In considering whether to release Mr. Shaban, this Court should also factor in the unique and harrowing conditions of his pretrial confinement. For over four months, Mr. Shaban has been incarcerated pretrial, first in Las Vegas and currently in Essex County. For these many months he has been unable to see his partner and his young children. His time inside the facility has been isolating and terrifying. At the time of his arrest in April, Mr. Shaban— like many of us— was hopeful that this country had turned a corner with COVID-19. But, in the past few weeks there has been a resurgence in the virus caused by the rapid spread of the highly contagious Delta variant. In New Jersey, there has been a 46% increase in the number of COVID-19 cases in just the last two weeks.[1] In Essex County specifically, there has been a 29% increase in the number of COVID-19 cases, and an alarming 67% increase in the number of hospitalizations due to COVID-19.[2]

Housed in a crowded facility where detained persons and staff members regularly cycle in and out, Mr. Shaban is particularly vulnerable to being exposed to COVID-19. Tragically, Essex County has already experienced the deadly side of COVID-19's rapid spread. The New York Times has traced 239 COVID-19 cases to the facility and, last fall,  one of these individuals died after contracting the illness.[3] [4]  The threat to Mr. Shaban's health as the Delta variant spreads is high and ongoing while he remains at Essex County.  The Court should consider this risk to Mr. Shaban's health along with the non-violent nature of the charges, Mr. Shaban's minimal criminal history, and his background and family needs, in making its bail determination.

### IV.    Proposed conditions of release.

The defense urges the Court to consider the following conditions on a personal recognizance bond that will reasonably assure Mr. Shaban's appearance when required and the safety of the community:

- Two financially responsible co-signers

- Edna Rogers to act as Alpha Shaban's third party custodian

---

[1]"Tracking Coronavirus in New Jersey: Latest Map and Case Count." NYTIMES, available at: https://www.nytimes.com/interactive/2021/us/new-jersey-covid-cases.html?auth=login-google (accessed 8-26-2021).
[2] *Id.*
[3] *Id.*
[4] "Essex County Jail Suspends In-Person Visits, Court Appearances Due to Virus Outbreak," WBUR, available at: https://www.wbur.org/news/2020/09/29/essex-county-jail-coronavirus-outbreak (accessed 8-26-2021).

- Live with Ms. Rogers in West Haven, Connecticut full time
- Home detention enforced by location monitoring.
- Mr. Shaban is not to possess licenses, ID cards, credit cards or other personally identifying documents in any name, or bearing any likeness, other than his own true name and likeness (except for his minor children)
- Any of the conditions imposed for Chiaka Oguadinma

The foregoing factors demonstrate that Mr. Shaban should be released pending trial. Thank you for the Court's consideration of this request.

Thank you for your consideration of this request.

Respectfully submitted,

/s/ Zawadi Baharanyi
Zawadi Baharanyi
Assistant Federal Defender
(212) 417-8735/ (917) 612-2753

cc:    Christy Slavik, Assistant U.S. Attorney.

Application granted.  The Court will hold a bail review hearing on September 9, 2021 at 11:00 a.m. in Courtroom 12C, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007.  The Clerk of Court is directed to terminate the motion pending at Dkt. No. 24.

SO ORDERED.

Dated: September 8, 2021
       New York, New York

_____
GREGORY H. WOODS
United States District Judge